IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **GLEIKE TAXI INC.,** | ) ) ) | Case No.  1:13-cv-06715 |
| *Plaintiff/Counter-Defendant,* | ) ) | Hon. Manish S. Shah Presiding Judge |
| v. | ) ) ) | Hon. Young B. Kim Magistrate Judge |
| **CHALLENGER CAB LLC,** | ) ) | |
| *Defendant/Counter-Claimant.* | ) ) | |

**COUNTER-CLAIMANT CHALLENGER'S RESPONSE TO GLEIKE'S
L.R. 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to N.D. Ill. L.R. 56.1(b)(3), Counter-Claimant Challenger Cab LLC hereby responds to Gleike Taxi, Inc's Statement of Undisputed Material Facts offered in support of its Motion for Summary Judgment.

1. Undisputed.
2. Undisputed.
3. Undisputed.
4. Undisputed.
5. Undisputed.
6. Undisputed.
7. Undisputed.
8. Undisputed.
9. Undisputed.
10. Undisputed.
11. Undisputed.

12. Undisputed.

13. Disputed. At no time did Gleike perform on the August 13, 2013 Agreement with Challenger. Gleike's sole representative, Mr. Berthome, was often unreachable, failed to schedule the cabs for installation before September 1, 2013 as originally promised, failed to obtain or provide the extension papers for the drivers, would not tell Challenger when and where the installations were to occur, sent Challenger's drivers to a facility where no installations were available, failed to obtain sufficient installation facilities and personnel to meet Gleike's obligations to its various customers, repeatedly installed meter systems that did not work in other companies' cabs, changed the Agreement from one of installing new Gleike meters to upgrading existing Challenger meters, installed only four upgraded meters in Challengers' cabs- none of which worked, failed to provided installations in a timely manner that would keep Challenger's drivers from being legally barred from work, and even failed to show up with the promised personnel on September 7, 2013 after telling Challenger he would get all of the installations done that day. Challenger S.J. Response Ex. 1 (Woldemicael Decl. ¶¶ 2-19).

14. Unknown, see ¶ 15, below.

15. Disputed. Based on the extension letters Gleike received from the Commission, the cabs under the Camel label were scheduled for installation on the 2nd and 3rd of September, while the Wonder cabs were scheduled for September 10th and 12th. However, initially, Gleike provided only about 80 extension letters out of approximately 250 drivers for which Challenger had provided the information. Later on, Gleike provided extension letters for some other drivers that Gleike had

misplaced or mistakenly sent to other cab companies. Many drivers, however, never received the extension letters, and thus could not legally operate after September 1 until an installation was obtained. Challenger S.J. Response Ex. 1 (Woldemicael ¶ 11).

16. Unknown, but immaterial.

17. Unknown, but immaterial.

18. Unknown, but immaterial.

19. Disputed. After Gleike's system failed in the other cabs, Mr. Berthome suggested that he instead upgrade Challenger's existing meters to make them compliant under the new regulations. Challenger S.J. Response Ex. 1 (Woldemicael ¶ 15).

20. *Id.*

21. Unknown, but immaterial.

22. Unknown, but immaterial.

23. Unknown, but immaterial.

24. Unknown, but immaterial.

25. Disputed. Challenger proposed to Gleike that technicians from National do the installations. Mr. Berthome agreed, but provided only two technicians, who conducted modification installations on four cars on September 6 at Bay Cab, taking 2-3 hours per installation. None of the four meters worked. Challenger S.J. Response Ex. 1 (Woldemicael ¶ 16).

26. Undisputed.

27. Undisputed that Challenger refused to have any further dealings with Gleike. Disputed that Gleike attempted to "salvage" the relationship, as its ongoing conduct

and unfulfilled promises since August 13, 2013 demonstrated that it could or would not meet its obligations. Challenger S.J. Response Ex. 1 (Woldemicael ¶ 2-19).

28. Disputed. Challenger had ongoing communications with Gleike—and unsuccessful attempts to communicate with Gleike, from August 14, 2013 until September 7, 2013 seeking to have Gleike meet its contractual obligations. Challenger S.J. Response Ex. 1 (Woldemicael ¶ 2-19).

29. Undisputed.

30. Undisputed.

31. Undisputed.

**Additional Material Facts**

32. It is undisputed that numerous modifications to the August 13 Agreement were made by Challenger and Gleike, as demonstrated by their conduct from August 13-September 7, 2013. Notwithstanding the Agreement's language stating Challenger was responsible for installing the new meters, Gleike agreed to do so. Challenger S.J. SMF ¶ 18; *see also* Challenger S.J. Response Ex. 1 (Wolemicael Decl. ¶ 8) and Ex. 2 (Driver Installation Contract). Although the August 13 Agreement stated Challenger was to pay the Activation Fee, Security Deposit, and provide the old meters (or substitute payment of $300/meter) on or before the Effective Date, August 13, 2013, Gleike did not request those funds or the meters on that day, and Gleike did not at any time send Challenger an invoice for its equipment, and made no request for payment. Challenger SMF ¶ 21. Although the Agreement stated Challenger was to pay Gleike on the date of execution, August 13, Gleike proceeded to order and program equipment, meet with meter shops and garages, and applied for extensions for

Challenger's drivers, even though Challenger had not paid or turned over its old meters. Challenger SMF ¶ 29. And, although the August 13 Agreement was to replace Challenger's existing meters with new Gleike meters, Gleike and Challenger later agreed Gleike would instead upgrade Challenger's existing meters. Challenger SMF ¶ 36.

33. It is undisputed that Challenger drafted the Driver Installation Agreement, which it provided to Challenger to be provided to the Challenger-affiliated drivers, under which Gleike was responsible for installing the Gleike meters. The Driver Agreement also specified that the drivers were to be bound only by the "Final User" provision of the August 13 Agreement between Challenger and Gleike, which did not place any "notice and cure" requirement on the drivers prior to their bringing suit. *See* Challenger S.J. Response Exs. 1 (Wolemicael Decl. ¶ 7) and 2 (Driver Installation Agreement).

34. The disputed material facts viewed in the light most favorable to Challenger demonstrate that Gleike's breach of the August 13 Agreement as controlled by the Taxi Commission deadlines was egregious enough that following the notice and cure provision would have been increasingly detrimental to Challenger's drivers—who were already unable to work (Camel) or facing imminent unemployment (Wonder) as a result of Gleike's failures to timely install working meter systems--that maintaining the relationship with Gleike was commercially unreasonable. Gleike's sole representative, Mr. Berthome, was often unreachable, failed to schedule the cabs for installation before September 1, 2013 as originally promised, failed to obtain or provide the extension papers for the drivers, would not tell Challenger when and

where the installations were to occur, sent Challenger's drivers to a facility where no installations were available, failed to obtain sufficient installation facilities and personnel to meet Gleike's obligations to its various customers, repeatedly installed meter systems that did not work, failed to provided installations in a timely manner that would keep Challenger's drivers from being legally barred from work, and even failed to show up with the promised personnel on September 7, 2013 after telling Challenger he would get all of the installations done that day.  Challenger S.J. Response Ex. 1 (Wolemicael Decl. ¶ 2-19).

        Respectfully submitted,


BY:    /s/ *Earl "Trey" Mayfield*
        Earl "Trey" Mayfield (admitted *pro hoc vice*)
        tmayfield@lewis-firm.com
        Michael Lewis (admitted *pro hoc vice*)
        mlewis@lewis-firm.com
        The Lewis Firm PLLC
        1250 H St., NW #400
        Washington, DC  20005
        (o) 202-288-6615
        (x) 888-630-6257

        Alan W. Nicgorski (IB# 6243574)
        nicgorski@hrdclaw.com
        Hansen Reynolds Dickinson Crueger LLC
        150 S. Wacker Dr., 24th Floor
        Chicago, IL 60606
        (o) 312-265-2253

## CERTIFICATE OF SERVICE

I certify that on October 22, 2015, a true and complete copy of the foregoing was served by electronic case filing upon the following:

>Svetlana Kaplina
>skaplina@elanlawgroup.com
>Helena Milman
>hmilman@elanlawgroup.com
>Elan Law Group
>73 W. Monroe
>Chicago, Il 60603
>(o) 312-772-5672
>(x) 312-284-5551
>*Counsel for Plaintiff Gleike, Inc.*


>__ /s_*Earl "Trey" Mayfield*_____
>Earl "Trey" Mayfield (admitted *pro hoc vice*)
>tmayfield@lewis-firm.com
>The Lewis Firm PLLC
>1250 H St., NW #400
>Washington, DC  20005